**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. C-1-03-096** |
| **PLAINTIFF** | **(DLOTT, J.)** |
| | **(HOGAN, M.J.)** |
| **VS.** | |
| **WILSON M. GRAHAM, ET AL.,** | |
| **DEFENDANTS** | |

**REPORT AND RECOMMENDATION**

In February, 2003, the Government filed its Complaint against defendant Wilson M. Graham, individually and d/b/a/ Graham and Associates, and defendant Homer Richardson, individually and d/b/a HG Asset Management Company. Later that month, this Court received an Order of Reference from Judge Dlott and began work on this case. Although the Complaint contains seventeen unnumbered pages, the essence of it is rather simple. In short, the Government seeks injunctive relief against Graham, Richardson and their respective business entities, the effect of which is to preclude them from preparing federal income tax returns for clients and promoting abusive trust schemes. The Government alleges that both Graham and Richardson promoted business trust packages designed by the Aegis Company and then Graham prepared federal income tax returns for clients who purchased the Aegis trust packages. The Government alleges that the resulting tax returns understated the income tax liability of the clients because the "trusts" created are shams due to the fact that the creators of trusts retain complete control over the corpus of the trusts.

Also pending before the Court are Defendants' motions to dismiss for lack of jurisdiction (Docs. 31, 32). Defendants argue that this Court lacks jurisdiction over the subject matter of this lawsuit because Defendants' activities did not take place "on a federal enclave". Defendants have offered no relevant authority in support of this motion. In accordance with this Court's ruling from the bench, this motion is wholly without merit. This Court has jurisdiction over this mater pursuant to 26 U.S.C. 7401 and 28 U.S.C. 1331. Consequently, the motions to dismiss should be denied.

The case proceeded to a two-day evidentiary hearing on August 4, 2003. The Government was represented by counsel, Michael R. Pahl, from the Tax Division of the United States Department of Justice. Defendants Graham and Richardson proceeded on a pro se basis, although each related in various pleadings that they appeared "in Propria Persona and not pro se." Testifying for the Government was David C. Morgason, a revenue agent for the past eighteen years. Also testifying for the Government was Missia H. Vaselaney, a member of the Cleveland law firm of Kahn Kleinman and an attorney who practices in the area of tax and estate planning. Mrs. Vaselaney is both a certified public accountant and a certified financial planner. Mrs. Vaselaney testified from Cleveland via video conference. After the greater part of her testimony, the Court lost the capacity to maintain the video-conference connection, and therefore Mrs. Vaselaney's testimony continued, without objection, by conference telephone. Defendants declined to offer testimony, but did present the testimony of Mike Vallone, the executive director of the Aegis Company, who defended the integrity of his company. Mr. Vallone testified solely by conference telephone at the urging of the pro se Defendants and over the Government's objection. Mr. T.J. Henderson, a director of HG Asset Management Company, one of the named Defendants, was precluded from cross-examining Agent Morgason because Mr. Henderson is not an attorney and the Court concluded that examining a witness during a trial constituted the practice of law.

## MRS. VASELANEY'S TESTIMONY

Mrs. Vaselaney testified that she had an undergraduate degree in accounting from the University of Dayton in 1982, and a law degree from Cleveland Marshall in 1984, the latter of which she obtained at age 23. In addition to her law degree, Mrs. Vaselaney is also a certified public accountant. Her professional career began at Price Waterhouse in January, 1985 and encompassed what she referred to as "executive tax work." Following a four year stint at Price Waterhouse, Mrs. Vaselaney moved on to Laudenbaugh & Horwitz, a Cleveland-based law firm where she spent the next two years. Her next employment was at Davis & Stern as a tax attorney, and then with Hahn Lorger. Both Davis & Stern and Hahn Lorger are Cleveland-based law firms. Following employment at Hahn Lorger, Mrs. Vaselaney spent four years with the Schottenstein firm and then began her current employment as a partner at Kahn Kleinman with a law practice confined to estate and tax planning, an area in which she is a certified expert.

The topic of abusive trusts came to Mrs. Vaselaney's attention from two directions. The first was in connection with her lectures to accounting and legal groups on topics of interest to the members of those groups. The second is more direct. A State Farm insurance agent, who had attended one of Mrs. Vaselaney's lectures, asked that she review his estate plan. She was handed a book describing the Aegis Trust, which Mrs. Vaselaney recognized as simply a restatement of the Heritage Trust, which she described as a "scheme." The insurance agent related to Mrs. Vaselaney that he had been told by Defendant Graham that by use of this trust mechanism, the agent could deduct household expenses and tuition and thus save approximately 90% of income and FICA taxes. Other agents who had resorted to the trust mechanism had received IRS notices and this fact led the agent to consult Mrs. Vaselaney.

Counsel's first step was to directly contact Defendant Graham by telephone and to purposefully not disclose that she was an accountant or an attorney. After being given what Mrs. Vaselaney referred to as a "sales pitch," counsel questioned Defendant Graham on how he could deduct household expenses when not associated with employment and how he could deduct children's educational expenses when the children are not employed by the taxpayer and the education received is not related to the child's occupation. Defendant Graham's response was to attempt to convince the insurance agent that Graham's advice was "cutting edge," and that Mrs. Vaselaney was uninformed.

Mrs. Vaselaney's husband is an attorney and litigation manager with State Farm Insurance Company and Mrs. Vaselaney frequently taught tax and estate planning classes to State Farm agents. After informing her husband of her contact with a State Farm agent and Defendant Graham, Mrs. Vaselaney's husband convened a meeting at his office, which was attended by six or seven State Farm agents. Mrs. Vaselaney attempted to "de-program" the other agents, who had apparently purchased the Aegis Trust package and were convinced that its use was legitimate. Counsel did develop an attorney-client relationship with some of the Aegis Trust purchasers and did refile their income tax returns. She further testified that the consequences of entering into these abusive trust schemes were significant and that her clients were negatively affected in numerous ways. Since approximately 300 State Farm Agents were customers or potential customers of Aegis, and since State Farm had been approached by IRS agents, the company sent formal notice to those agents advising those agents to "obtain an independent analysis by a competent tax advisor as to the validity

of the promised tax savings." One of the most telling observations in this case occurred when Mrs. Vaselaney, previously the Chair of the Estate Planning Committee of the Cleveland Bar Association, was given a copy of the Aegis trust document and observed it to be identical to the Heritage trust document, the promoters of which she had been trying to "run these people kind of out of the State of Ohio." Mrs. Vaselaney observed:

> And I looked through the book and even found a page where they hadn't changed the name from Heritage to Aegis. . . It's the exact same document, word for word, with the names changed.

After the meeting, Mrs. Vaselaney used her investigative skills, first learned when she worked as a bank investigator while a college student, to learn that Defendant Graham had once worked at State Farm and that young agents had been steered to Defendant Graham as someone who "understands our system." Investigating further, Mrs. Vaselaney learned from the Ohio Accountancy Board that Defendant Graham had been convicted of a felony involving fraud and had lost his accountant's license. She further learned that the case file of the criminal case had been "misfiled" and that the Board's website erroneously reported that Defendant Graham had been "reinstated."

During cross-examination, Mrs. Vaselaney admitted that business trusts are codified at 26 C.F.R., § 301.7701-4(b), but stated that the Heritage/Aegis model does not comply with this provision of the tax law because there is no legitimate business purpose. She also explained that when the trustee is also the grantor and beneficiary, the doctrine of merger negates the trust. She explained that business trusts predate the Internal Revenue Code and "are not used by anybody today" and "not talked about at any estate planning conferences." She limited the use of business trusts to real estate transactions.

## MR. MORGASON'S TESTIMONY

David Morgason is a revenue agent with eighteen years experience with the Internal Revenue Service. Mr. Morgason holds a masters degree in business administration and as part of his training with IRS, completed a five-phase course in taxation. The first two phases dealt with preparation of the individual tax return (Form 1040), which then progressed to Phase Three, which is corporate and C-corporation returns. Phase Four dealt with S-corporations and partnership returns and Phase Five

4

dealt with corporate liquidations, reorganizations and acquisitions. Mr. Morgason also completed specialized training in the recognition of "abusive trust schemes" and has taught classes to fellow revenue agents.

Agent Morgason identified IRS Notice 97-24, published in 1997 and identified as Plaintiff's Exhibit 2, which contains information directed to the public on the subject of abusive trust schemes, considered illegal by the IRS. These trust schemes are listed as the business trust, family trust, offshore trust, final trust and the charitable trust, all of which permit tax benefits not intended by Congress by permitting the deduction of personal expenses forbidden by Section 262 of the Internal Revenue Code. It was in the investigation of abusive trust schemes that Defendants Graham and Richardson came into Agent Morgason's focus. One hundred twenty-five returns in twelve states were located as being prepared by Defendants Graham, Graham & Associates, Shirley Graham, Mitchell Graham and Mr. Welti, a defendant in a previous case heard in this magistrate judge's courtroom. Agent Morgason testified that once the returns were identified, the next level of investigation began with taxpayer contact. Agent Morgason said that he audited eight or nine of these returns himself and that these returns from 1997-2000 were from taxpayers who were predominantly State Farm agents with gross incomes of approximately $300,000. Agent Morgason testified that self-employed persons were the target consumers because of the opportunity to reduce social security taxes to a much greater extent than employees receiving W-2 forms.

The typical technique was to take a large management fee paid to an asset management company and deduct the asset management fee on Form 1040. The deduction is fictitious because the asset management company performed no service. The income from the asset management fee is then paid to a charitable trust. The problem with the scheme is that the asset management fee is controlled by the taxpayer as is the charitable trust. The trust packages were purchased by the taxpayers from the Aegis Corporation, an Illinois-based company, which listed Defendant Graham as the "preferred return preparer." Defendant Graham was described as no longer licensed as a certified public accountant and precluded from representing clients before the IRS. Defendant Wilson Graham and Associates includes Defendant Graham, his wife Shirley and his son, Mitchell. Mr. Morgason described the process of attempting to obtain the trust documents from the taxpayers as difficult, as is the process of gaining compliance.

Morgason identified Exhibit 1 as an excerpt from an IRS website containing a series of alerts

dealing with the subject of abusive trusts and the IRS position on them. These alerts are published by the criminal division and are available to the public, accountants, and tax preparers. The trusts promoted by Defendants Graham and Richardson are of the type considered illegal by IRS and described on the website. Exhibit 3 is the reported case upon which Plaintiff relies as precedent. The case is *Muhich v. Commissioner of Internal Revenue*, 238 F.3d 860 (7th Cir. 2001), a case decided by the federal Tax Court in favor of the Government and affirmed by the Seventh Circuit. The subject matter of the *Muhich* case is the same Aegis trust scheme that was promoted by Defendants Graham and Richardson. A discussion of the *Muhich* case occurs in our Report and Recommendation filed in *United States v. Robert Welti*, Case No. C-1-02-243 (Dlott, J). (*See* Doc. 43).

      Exhibit 4 is a copy of this Court's Report and Recommendation and Judge Dlott's Order resulting therefrom in the case wherein Robert Welti was the defendant. The common denominator is the asset management fee, although Mr. Welti's returns were of the off-shore, rather than the charitable variety. Exhibit 5 is Agent Morgason's declaration, the significance of which is that, contrary to the amount stated therein, the Government has recovered 7.8 million dollars as of the date of trial and all funds recovered came from the taxpayers and not Defendants Graham or Richardson. Exhibits 6,7, and 8 are the declarations of State Farm agents Sandra Williams, Todd Young, and Allan Kamm. Exhibit 9 is the declaration of Charles Swayne. All the exhibits relate to Aegis trust documents promoted by Defendants Graham and Richardson, except the Swayne trust which was prepared by Robert Welti. Exhibits 10-15 relate to the Dresbachs and certain certified copies of tax documents audited by Agent Morgason. The Dresbach's returns were prepared by Defendant Graham. After audit, the Dresbachs became cooperative and filed amended returns showing the correct amount of taxes owed. Mr. Dresbach is a State Farm agent.

      Exhibit 16-20 contain certified copies of tax documents filed by the Hospodars. Exhibit 21 is the 1996 trust return for SWG Asset Management Company, prepared by defendant Wilson Graham and signed by his wife, Shirley Graham. In the 1996 tax year, the Grahams filed no Form 1040, but simply reported income to the asset management company and then took a large charitable deduction, the effect of which was to wipe out the income for that year. Exhibit 22 is the closing agreement between IRS and taxpayer, Sandy Williams, a State Farm agent whose tax documents were shown in Exhibit 6. The remaining Exhibits 23-27 are opinions from *Criss v. Commissioner of Internal Revenue*, *Richards Asset Management Trust v. Commissioner of Internal Revenue, Castro*

6

*v. Commissioner of Internal Revenue, United States v. Rosile* and *Abdo v. United States Internal Revenue Service*.

The Government's evidence that Defendant Richardson was the promoter of the sale of the Aegis Trust packages comes from fliers, one of which was obtained from a seminar conducted at a Holiday Inn in the Eastgate area of Clermont County, Ohio, where Richardson was listed as a sponsor and Aegis documents referred to him, as well as to Graham, as part of the Aegis "dream team."

Agent Morgason estimated that the harm done to the United States was approximately 40 million dollars, a figure which includes penalties and interest from the 125 taxpayers that were the subject of Morgason's study.  To be fair to Defendants, not all of these taxpayers consulted Defendant Graham for the preparation of their tax returns.  In addition, there is no evidence that Defendant Richardson promoted the trust packages purchased by all 125 taxpayers.  To be equally fair to plaintiff, the client lists of Defendant Graham have never been secured by the Government either, so the list of 125 taxpayers who were the subject of Morgason's study could be less than the total number of taxpayers involved.  Morgason intimated that the loss to the individual taxpayers involved filing amended returns and paying counsel for resolving their tax liability with the IRS, a process that involves legal fees and the payment of interest and penalties, although the interest and penalties are frequently the subject of negotiations between the IRS and taxpayers.

## MR. VALLONE'S TESTIMONY

Defendants Graham and Richardson declined to testify and also chose not to call T.J. Henderson, a director of HG Asset Management Company, as a witness.  However, defendants presented the telephonic testimony of Michael Vallone, the Executive Director of the Aegis Company.  The Court permitted Mr. Vallone to testify by telephone over the Government's objection because it was necessary to understand, from the point of view of the Aegis Company, whose trust packages Defendants Graham and Richardson were promoting, and why the Defendants were and are so adamant that their position in this case was meritorious.  Mr. Vallone is neither an attorney nor an accountant, but a self-described a "legal assistant," and a person who relied upon the legal advice of a since-disbarred attorney by the name of Bertoli.  Vallone denied having a contractual relationship with either Graham or Richardson, and denied any direct exchange of funds between Aegis and either of the Defendants.  Vallone, however, admitted that both Defendants were promoters of the Aegis

Trust packages, which were sold directly to consumers for $10,000 to $15,000. Mr. Vallone attempted to justify the legality of the trust packages that Aegis sold prior to March, 2000, the date on which Aegis offices were "raided" by IRS agents. (The Court interprets Vallone's term to be that the service of a search warrant occurred that day). The Court remains unconvinced that Congress intended taxpayers to take deductions for personal expenses through the vehicle of a trust. The Court also remains unconvinced that a taxpayer can lawfully deduct personal expenses through the vehicle of a charitable trust, while maintaining control over the corpus of the trust. Rather, the Court is convinced that Certificates of Beneficial Interest, received by the grantor of the trust in exchange for the assets put into the trust, have no effect on the basis of property exchanged by the taxpayer for those Certificates. The Court regards *Muhich v. Commissioner of Internal Revenue*, 238 F.3d 860 (7th Cir. 2001) as precisely on point. The Court believes that were the *Muhich* case tried in this Circuit, the Court of Appeals for the Sixth Circuit would likely agree with the 7th Circuit's reasoning and analysis.

## OPINION

The decision whether or not to issue a preliminary injunction is within the Court's discretion. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). The issuance of a preliminary injunction is an extraordinary remedy that may only be granted after the Court has carefully considered the following four factors: (1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir.2000) (citation omitted); *Basicomputer Corp. v. Scott*, 937 F.2d 507, 511 (6th Cir. 1992); *Scioto County Water District No.1 v. Scioto Water, Inc.*, 916 F. Supp. 692, 698 (S.D. Ohio 1995)(Beckwith, J.). When considering these factors the district court should balance each factor against the others to arrive at its ultimate determination. Id. These factors are not prerequisites to injunctive relief; rather, they are factors that the Court must balance. *In re Delorean Motor Co.*, 755 F.2d 1223 (6th Cir. 1985). Thus, the Court may enter a preliminary injunction where plaintiffs demonstrate serious questions going to the merits and irreparable harm which outweighs any potential harm to the defendant. *Friendship Materials*, 679 F.2d at 105. In addition, as the strength of

showing as to irreparable harm increases, the necessity of showing a likelihood of success on the merits decreases. *Oleson's Food Stores v. Local 876 United Food & Commercial Workers*, 797 F. Supp. 591, 593 (W.D. Mich. 1991). Nevertheless, the irreparable harm element must be analyzed carefully. As the Sixth Circuit has stated:

> Despite the overall flexibility of the test for preliminary injunctive relief, and the discretion vested in the district court, equity has traditionally required [a showing of] irreparable harm before an interlocutory injunction may be issued.

*Friendship Materials*, 679 F.2d at 103.

Rendering the equitable relief sought by the Government requires us to assess the damage to the Government if such relief is denied, the effect on the Defendants if the relief sought is granted, and to further assess the effect upon the public of either alternative. Although the Government argues that equitable considerations need not be considered if the injunctive relief sought is statutory (U.S.C. §§ 7204, 7407 and 7408), the Court finds no harm in considering these issues, especially since their resolution favors the Government's position. If the relief sought were to be denied, the Government would go to the added expense of investigating, auditing and attempting collection of underpaid taxes resulting from a tax minimizing strategy analyzed both by the IRS and the Seventh Circuit as a sham. Permitting this behavior to continue would have a negative impact on both the tax laws and the public coffers. The effect upon the individual taxpayer would also be dramatic. In many, if not most cases, the individual taxpayer would require the expertise of tax experts to restore his or her status, not to mention the added exposure to interest and penalties and the personal anguish that many citizens feel as a byproduct of having to confront a government agency.

The effect upon the Defendants would be to put them out of the business of preparing income tax returns and preying upon the public trust. A person seeking to minimize his or her taxes deserves the services of an accountant or attorney who is both knowledgeable and skillful in delivering advice and drafting documents that take advantage of the opportunities that realistically exist to accomplish the goal of tax minimizing. To promote what is "too good to be true," especially in the face of convincing opposition from both the IRS and the Court that such a scheme is illogical and illegal does no good to either the recipient or the promoter. If the blame were properly placed, Defendants Graham and Richardson might run the risk of becoming the objects of a backlash at the hands of their own clients.

In addition, a preliminary injunction cannot issue unless the movant has a strong likelihood of success on the merits of the case. Thus far, the Government has produced convincing proof that it will prevail. On the other hand, Defendants have pursued a strategy that is extremely unlikely to succeed. The Government has placed great emphasis on the *Muhich* case, discussed in detail in our Report and Recommendation in the Welti case (C-1-02-243). Although *Muhich* involved Heritage, rather than Aegis trusts as in the instant case, the documents are identical as Mrs. Vaselaney has testified. Rather than admit that the trust schemes were bogus as *Muhich* held and attempt to detach themselves from them, Defendants chose to present the testimony of "paralegal" Michael Vallone and defend the Heritage-Aegis package in the face of the *Muhich* decision on the apparent belief that this Court should not follow the decision because it comes from the Seventh Circuit rather than the Sixth Circuit.

The Government seeks preliminary injunctive relief against Wilson M. Graham, d/b/a Graham and Associates, to enjoin him from engaging in activity subject to penalty under 26 U.S.C. §§ 6694 and 6695, preparing federal income tax returns understating taxpayer liabilities, and failing to supply a list of clients and provide copies of clients' tax returns. In addition, the Government seeks preliminary injunctive relief against Defendants Graham and Richardson to preclude them from engaging in activities subject to penalty under 26 U.S.C. §§ 6700 and 6701, and from "engaging in conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws."

Defendant Graham was listed as a "preferred return preparer" on the Aegis trust packages because, in Agent Morgason's words, "the mechanics of this promotion would never withstand the scrutiny of a tax attorney or a CPA." Morgason also presented unrebutted testimony that Defendant Richardson and HG Asset Management held seminars around the country, including Ohio, Tennessee, Louisiana, and Mississippi, in which Richardson would "pitch the Aegis scheme." The primary targets of these seminars were State Farm agents or other self-employed individuals. Morgason described as typical an attempted audit of a State Farm agent who appeared with the Defendants and sought to defend the trust scheme, rather than produce the trust instrument and the records sought by IRS. The IRS requested, but Defendants refused to disclose, their client lists. Defendant Graham has placed false social security numbers on tax returns he has prepared, the apparent purpose of which is to obstruct the IRS from investigating and locating those returns.

**IT IS THEREFORE RECOMMENDED THAT**:

The Court preliminarily enjoin Defendants Wilson Graham, Graham & Associates, Homer Richardson, and HG Asset Management Company from preparing income tax returns and otherwise representing clients before the IRS; that the Court preliminarily enjoin those same defendants from promoting the sales of abusive trusts under the name of Aegis, Heritage, or any other name, and that the Court order Defendants to disclose to IRS a list of the names and current addresses of all those for whom they prepared tax-related documents in connection with a trust package sold by another and also disclose to IRS the names and current addresses of all those who were given, with or without consideration, materials promoting trust schemes as a means to lessen or eliminate income taxation.


November 19, 2003                                s/Timothy S. Hogan
                                                                                  Timothy S. Hogan
                                                                                   United States Magistrate Judge

J:\HOGANTS\graham.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

---

**UNITED STATES OF AMERICA,**           **CASE NO. C-1-03-096**
    **PLAINTIFF**                               **(DLOTT, J.)**
                                                **(HOGAN, M.J.)**
    **VS.**

**WILSON M. GRAHAM, ET AL.,**
    **DEFENDANTS**

# NOTICE

Attached hereto is the Report and Recommended decision of the Honorable Timothy S. Hogan, United States Magistrate Judge, which was filed on 11/19/2003. Any party may object to the Magistrate's findings, recommendations, and report within (10) days after being served with a copy thereof or further appeal is waived. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Such parties shall file with the Clerk of Court, and serve on all Parties, the Judge, and the Magistrate, a written Motion to Review which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made along with a memorandum of law setting forth the basis for such objection, (such parties shall file with the Clerk a transcript of the specific portions of any evidentiary proceedings to which an objection is made).

In the event a party files a Motion to Review the Magistrate's Findings, Recommendations and Report, all other parties shall respond to said Motion to Review within ten (10) days after being served a copy thereof.